UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>THREE HUNDRED THREE VIRTUAL CURRENCY ACCOUNTS, *et al.*,<br><br>    *Defendants.* | No. 20-cv-712 (DLF) |

**MEMORANDUM OPINION**

This action arises out of an international investigation of DarkScandals (the Website), a website that directed users to child pornography and other illicit videos and images. Compl. ¶ 2, Dkt. 1. The United States initiated this civil forfeiture action in rem against two domain names and 303 virtual currency exchange accounts (the Defendant Properties), which were allegedly used in connection with the Website's criminal activities. Before the Court is the government's Motion for Default Judgment against the Defendant Properties. Pl.'s Mot. for Default J. (Pl.'s Mot.), Dkt. 12. For the reasons that follow, the Court will grant the motion.

**I.  BACKGROUND**

    **A.  Factual Background**[1]

Bitcoin and Ether are two virtual currencies which are controlled through computer software and traded over the Internet rather than issued by a bank or government. Compl. ¶¶ 11–12. Both Bitcoin and Ether are bought and sold on "virtual currency exchanges," where

---

[1] On a motion for default judgment following the entry of default, courts construe the well-pleaded allegations of the complaint as admitted. *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011).

conventional money can be converted into virtual currencies and vice versa. *Id.* ¶ 17. These virtual currencies are sent and received through "addresses" akin to email addresses, *id.* ¶ 14, each of which has a "private key" akin to a password that is generated by the user, *id.* ¶ 15. For each virtual currency transaction, a customer can use a single address or multiple addresses. *Id.* ¶¶ 14–15. These transactions are recorded on a decentralized public ledger called the "blockchain." *Id.* ¶¶ 11, 18–19.

The DarkScandals Website—which was available on both the darknet and the clearnet in virtually identical form—offered users the same service: access to "obscene content, including videos that depicted sexual assault and child pornography."[2] *Id.* ¶ 2. The Website delivered these illicit materials in "packs," each of which "contained approximately 2,000 videos and images." *Id.* ¶¶ 27–28. Website users could access the packs by uploading illicit videos that could be used in future packs, *id.* ¶¶ 27–29, or by purchasing the packs with virtual currencies, *id.* ¶¶ 27, 33–34. The Website instructed purchasing customers to send payment to one of the Website's four virtual currency addresses and to then send proof of payment to an encrypted email address associated with the Website. *Id.* ¶¶ 33–35. Altogether, the Website received approximately 1,650 deposits totaling roughly $1.6 million in Bitcoin and $5,730 in Ether. *Id.* ¶ 37.

While conducting an investigation of Welcome to Video, another child pornography website, law enforcement officers discovered that some of the Welcome to Video customers also had made payments to the DarkScandals Website. *Id.* ¶¶ 38–40. These transactions prompted officers to open a separate investigation. *See id.* In this investigation, undercover officers in

---

[2] The two domain names for the DarkScandals Website were "darkscandals.com and darkscandals.co." Compl. ¶ 1; *see also id.* ¶ 46.

Washington, D.C. sent virtual currency payments to one of the Website's virtual currency addresses, *id.* ¶ 40, and proof of payment to one of the encrypted email addresses associated with the Website, *see id.* ¶¶ 33–35, 41.  Thereafter, the officers received illicit videos containing child pornography from an email account associated with the Website.  *Id.* ¶ 42.  By analyzing the blockchain, *id.* ¶ 20, law enforcement officials identified eight virtual currency exchanges (the Exchanges) that hosted transactions between the Website and the 303 virtual currency accounts at issue here, *id.* ¶ 48.  All of the 303 virtual currency accounts "made at least one payment to the [Website]," *id.* ¶ 50, and many of those accounts appear to have been used solely to transact with the Website, *id.* ¶ 51.

### B. Procedural History

On March 12, 2020, the United States filed a verified complaint for forfeiture in rem of the Defendant Properties.  Compl.  On March 13, 2020, the Clerk of the Court entered a warrant for arrest in rem of the Defendant Properties.  Dkt. 2.  The government posted notice on http://www.forfeiture.gov for thirty consecutive days from March 21, 2020 to April 19, 2020.  Decl. of Publication, Dkt. 5.  No claims were filed in response to the publication before the deadline of May 20, 2020.  *See* Am. Aff. in Supp. of Default ¶ 8, Dkt. 8; Decl. of Publication.  The government also identified potential claimants of the Defendant Properties using "know your customer" information that the Exchanges were required to collect, Pl.'s Mot. at 28, and it sent notice to those potential claimants through email, mail, or both.  *Id.* at 29; Am. Aff. in Supp. of Default ¶ 5.  As of July 10, 2020, no potential claimants had filed a claim to any of the Defendant Properties.  *Id.* ¶ 8.

On July 10, 2020, the government filed an affidavit for default, *see* Am. Aff. in Supp. of Default, and on July 17, 2020, the Clerk of Court entered default, Dkt. 10. The United States filed this motion for default judgment on July 27, 2020. *See* Pl.'s Mot.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure empower district courts to enter default judgment against a defendant who fails to defend its case. Fed. R. Civ. P. 55(b)(2); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). While federal policy generally favors resolving disputes on the merits, default judgment is appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (internal quotation marks omitted).

Obtaining default judgment is a two-step process. First, the plaintiff must request that the Clerk of Court enter default against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). The Clerk's entry of default establishes the defendant's liability for the well-pleaded allegations of the complaint. *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). Second, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). At the default judgment stage, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks and alterations omitted). "[T]he defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (internal quotation marks omitted).

Pleading requirements in civil forfeiture actions are governed by the Supplemental Rules and by the Federal Rules of Civil Procedure to the extent that they are "not inconsistent with

the[] Supplemental Rules." Fed. R. Civ. P. Supp. R. A(2).  Supplemental Rule G establishes the requirements for a complaint in such an action.  As relevant here, the complaint must be verified, state the grounds for jurisdiction, describe the property "with reasonable particularity," identify the statute under which the action is brought, and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  *Id.* Supp. R. G(2).  Though the government must prove a forfeiture claim by a preponderance of the evidence to succeed at trial, it need not do so at this stage.  *See United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166, 2018 WL 3949962, at *8 (D.D.C. 2018).  However, "[b]efore a default judgment is entered pursuant to a complaint for forfeiture in rem, the government must also show that it complied with the notice requirements contained in the Supplemental Rules."  *Id.* at *5.

### III.   ANALYSIS

#### A.   Notice

Supplemental Rule G(4) mandates that the government provide two forms of notice in a forfeiture action in rem: notice to the public via publication and notice to potential claimants via direct notice.  *See* Fed. R. Civ. P. Supp. R. G(4)(a), (b).  Notice by publication must describe the property, state the time to file a claim and answer, and name the government attorney to be served with the claim and answer.  *Id.* Supp. R. G(4)(a)(ii).  The notice is sufficient if it is published "on an official internet government forfeiture site for at least 30 consecutive days."  *Id.* Supp. R. G(4)(iv)(C).  Here, the government posted notice of the forfeiture proceeding on http://forfeiture.gov for thirty consecutive days, beginning on March 21, 2020 and ending on April 19, 2020.  Am. Aff. in Supp. of Default ¶ 7; Decl. of Publication at 1.  The public notice stated that "[a]ny person claiming a legal interest in the Defendant Propert[ies] must file a

verified Claim with the court within 60 days from the first day of publication." *Id.* at 8. No claims had been filed in response to the publication by May 20, 2020. Am. Aff. in Supp. of Default ¶¶ 7–8; *see* Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B) (requiring any claim to be filed "no later than 30 days after final publication of . . . legal notice under Rule G(4)(a)"). Accordingly, the government has satisfied its obligation to provide notice by publication. *See id.* Supp. R. G(4)(a)(iv)(C).

Direct notice must be sent "to any person who reasonably appears to be a potential claimant" and "by means reasonably calculated to reach the potential claimant." *Id.* Supp. R. G(4)(b)(i), (iii)(A). The government identified and received contact information for potential claimants using subpoenaed "know-your-customer" information held by the Exchanges as well as search warrant returns from a related criminal proceeding against the owner and operator of the Website. *See* Pl.'s Mot. at 28. On or about April 18, 2020, the government sent notice via email to 302 known potential claimants whom it had identified. *Id.* at 28–29. Of these email notices, 272 were successfully delivered, and twenty-nine "bounced back" as undeliverable. *Id.* at 29. With respect to the twenty-nine potential claimants whose email notices were not delivered, eighteen had provided the Exchanges with their physical address, so the government sent those potential claimants a second notice by mail on or about June 3, 2020, and of those, only one was returned as undeliverable. *Id.* The eleven remaining claimants "provided no address, and thus could not be contacted." *Id.* No potential claimants filed a claim to the Defendant Properties on or before July 10, 2020. Am. Aff. in Supp. of Default ¶ 8.

The government has satisfied its obligation to take steps "reasonably calculated" to provide direct notice to potential claimants. *See* Fed. R. Civ. P. Supp. R. G(4)(b). Adequate notice requires only "that the government *attempt* to provide actual notice; it does not require

6

that the government demonstrate that it was successful in providing actual notice." *$1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 2018 WL 3949962, at *5 (emphasis added) (quoting *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005); *see also Whiting v. United States*, 231 F.3d 70, 76 (1st Cir. 2000) ("'Reasonably calculated' means likelihood, not certainty."). When the government attempts to provide notice by "means reasonably calculated to reach the potential claimant," Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(A), and "hear[s] nothing back indicating that anything ha[s] gone awry," it is reasonable to believe the chosen method informed the interested parties, *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

Under these circumstances, email was an appropriate form of notice because this case involves potential claimants whose exact location is difficult to pinpoint, and the nature of the crimes involved indicates that the owners of the Defendant Properties had a high level of cyber-proficiency. *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06-cv-2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (permitting notice by email where "defendants conduct business extensively . . . through [the] Internet"); *see also Fed. Trade Comm'n v. PCCare247, Inc.*, No. 12-cv-7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (permitting notice by email where it was "reasonably calculated to provide defendants with notice"). Because notice by email was reasonably calculated to reach the potential claimants, *see* Fed. R. Civ. P. Supp. R. G(4)(b)(i), the government did not need to take further action to notify potential claimants.

For those potential claimants whose email notices were returned as undeliverable, the government's notice by mail was sufficient. Although the government was unable to deliver email or regular mail notice to twelve potential claimants, *see* Pl.'s Mot. at 29–30, the government's attempts to provide direct notice, coupled with notice via publication, satisfied its

obligations.  "[T]he government may satisfy due process with mere publication of a forfeiture notice when the government does not know or reasonably cannot discover the claimant's whereabouts."  *Johnson v. United States*, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004); *see also Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 317 (1950).  Consequently, the government has met the notice requirements of Supplemental Rule G(4).

### B. Adequacy of the Complaint

Supplemental Rule G(2) establishes the requirements for a civil forfeiture complaint.  *See* Fed. R. Civ. P. Supp. R. G(2).  In any action seeking forfeiture in rem under a federal statute, "the complaint must be verified, state the grounds for jurisdiction and venue, describe the property with reasonable particularity, identify the statute under which the forfeiture action is brought, and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte, Ltd.*, 368 F. Supp. 3d 10, 19 (D.D.C. 2019) (internal quotation marks omitted).  The government has met these requirements here.

The government has filed a verified complaint that describes the Defendant Properties in detail and identifies the statute, 18 U.S.C. § 2254, under which the forfeiture action was brought.[3]  *See* Compl. ¶¶ 54–56; *see also* Pl.'s Mot. at 32 n.3.  This Court has jurisdiction over "any action or proceeding for the recovery or enforcement of any . . . forfeiture . . . incurred under any Act of Congress."  28 U.S.C. § 1355(a).  Venue is proper in the District of Columbia because it is where the "acts . . . giving rise to the forfeiture occurred," 28 U.S.C.

---

[3] The government also brings this action under 18 U.S.C. § 1467(c), alleging that the Defendant Properties were used to knowingly transport obscene materials in interstate commerce for the purpose of sale or distribution, in violation of 18 U.S.C. § 1465.  *See* Pl.'s Mot. at 2, 33–38.  The Court need not address this alternative theory because the Defendant Properties are subject to forfeiture under 18 U.S.C. § 2254.  *See* Pl.'s Mot. at 32 n.3.

§ 1355(b)(1)(A), and it is the "judicial district . . . into which [the Defendant Properties] [were] brought" after seizure, 28 U.S.C. § 1395(c).

Thus, the only remaining issue is whether the complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *United States v. All Assets Held in Account Number XXXXXXX*, 83 F. Supp. 3d 360, 366 (D.D.C. 2015) (quoting Fed. R. Civ. P. Supp. R. G(2)(f)). The government alleges that the Defendant Properties were used to promote the commission of violations of 18 U.S.C. § 2252(a)(4)(B)(i), which prohibits individuals from "knowingly possess[ing], or knowingly access[ing] with intent to view . . . films . . . or other matter which contain[s] any visual depiction . . . involving the use of a minor engaging in sexually explicit conduct." The facts alleged in the complaint support a reasonable belief that the government will be able to prove at trial that individuals associated with the Defendant Properties knowingly accessed or possessed child pornography and used the Defendant Properties for those purposes.

As described in the complaint, the Website's users viewed child pornography on the Website's home page. *See* Compl. ¶ 26; *see also* Pl.'s Mot. at 33. Users who sought to access additional child pornography had to either upload new content onto the Website or make a payment to one of four virtual currency addresses associated with the Website and then send proof of payment to the Website's encrypted email address. Compl. ¶¶ 33–35. Only after users provided proof of payment did the Website send them additional child pornography. *Id.* ¶¶ 27, 33–35. These necessary affirmative steps provide "more than [a] substantial basis" to furnish a reasonable belief that "[users] logging into [the Website] did so with the intent to access, view, and/or distribute child pornography." *United States v. Taylor*, 250 F. Supp. 3d 1215, 1230 (N.D. Ala. 2017). In addition, records obtained from the virtual currency exchanges confirm that each

of the 303 virtual currency exchange accounts made at least one payment to the Website, *see* Compl. ¶ 50, and many appear to have been opened for the sole purpose of transacting with the Website, *id.* ¶ 51.  Together, these facts support a reasonable belief that the government will be able to meet its burden of proof at trial.

Forfeiture is authorized under 18 U.S.C. § 2254 if the Defendant Properties were "used or intended to be used to commit or to promote the commission" of knowingly accessing child pornography in violation of § 2252.  18 U.S.C. §§ 2253(a)(3), 2254.  To "use" is to "convert to one's service, to employ, to avail oneself of, and to carry out a purpose or action by means of." *United States v. Hull*, 606 F.3d 524, 528 (8th Cir. 2010) (internal quotation marks omitted).  Here, the two domain names associated with the Website provided the means by which users could access, view, and download the child pornography on the Website.  *See* Compl. ¶¶ 41, 44–47.  The 303 virtual currency accounts were used to make payments to other virtual currency accounts controlled by the Website that in turn enabled users to access and download illicit materials from the Website.  *See id.* ¶¶ 26–27, 33–34.  The evidence "show[s] a substantial connection—not merely an incidental or fortuitous relationship—between the [Defendant Properties] and the offenses."  *Hull*, 606 F.3d at 527–28.  The verified complaint thus alleges sufficient facts to support a reasonable belief that the government would be able to show at trial by a preponderance of the evidence that the Defendant Properties were "used" to commit violations of 18 U.S.C. § 2252, and are therefore forfeitable pursuant to 18 U.S.C. § 2254.

## CONCLUSION

The verified complaint states a claim for forfeiture in rem pursuant to Supplemental Rule G(2).  The government also has complied with the notice requirements of Supplemental Rule G(4), and no claimant has appeared to contest this matter.  Accordingly, the government's

motion for default judgment is granted.  An order consistent with this decision accompanies this memorandum opinion.

February 19, 2021

*Dabney L. Friedrich*
DABNEY L. FRIEDRICH
United States District Judge